**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**7841 PINES BOULEVARD, LLC,**

Plaintiff,

v.

**114 CHURCH STREET FUNDING,
LLC et al.,**

Defendants.

Case No. 18-cv-07405

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff 7841 Pines Boulevard, LLC brings suit against Defendant Madison

Title Agency, LLC ("Madison") for breach of contract, unjust enrichment, breach of

fiduciary duty, and conversion. The case originally named five other defendants and

arises out of a default by 114th Street Funding on a construction loan.[1] Before the

Court is Madison's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

(Dkt. 53). For the following reasons, Defendant's motion is denied.

## BACKGROUND

The following facts are taken from Plaintiff's Second Amended Complaint

("SAC") and are accepted as true for purposes of the present motion. On July 13, 2017,

Plaintiff loaned $1,200,000 to 114 Church Street Funding, LLC ("Borrower"), the

owner of a commercial office building located at 1221 West 175th Street in Homewood,

Illinois (the "Property"). (Dkt. 43 at ¶¶ 12; 14). The loan was secured by a mortgage

---

[1] Plaintiff and Defendant Stewart Title Guaranty have settled their dispute. (Dkt. 52). Default
judgment was entered against all remaining defendants. (Dkt. 17).

1

on the Property. (*Id.* at ¶ 14). Plaintiff alleges that Madison served as the escrow agent for both Plaintiff and Borrower during the transaction (*Id.* at ¶ 70). Plaintiff alleges it had an oral agreement with Madison where Madison would obtain signatures on the loan closing documents, receive and distribute payments related to the loan, including liens and taxes, and facilitate the recording of the mortgage. (*Id.* at ¶ 49). Accordingly, Plaintiff deposited the $1.2 million into Madison's escrow account, of which $419,633.17 (the "Escrow Proceeds") [2] was to be used by Madison to pay off liens and outstanding taxes on the Property. (*Id.* at ¶ 52; Exhibit F). The remaining amount was disbursed to Borrower. (*Id.* at Exhibit F). Madison issued a Settlement Statement embodying this obligation. (*Id.*).

Borrower defaulted on the loan, and Plaintiff moved to foreclose on the Property. (*Id.* at ¶ 54). In June 2018, while preparing to file its foreclosure claim, Plaintiff discovered that Madison had failed to use the Escrow Proceeds to pay off certain taxes on the Property. (*Id.* at ¶¶ 54-55). As a result, tax installments on the Property were sold to third parties, and the Property was subject to forfeiture. (*Id.* at ¶¶ 29; 54). On December 5, 2018, Madison confirmed "that it continued to retain escrow proceeds" in excess of $77,000 "which were intended by Plaintiff and the Borrower to be used to pay off property taxes and/or liens against the Property." (*Id.* at ¶¶ 37; 77-78). Subsequently, Plaintiff used its own funds to pay off the outstanding taxes on the Property. (*Id.* at ¶ 66; 81). In August 2019, Plaintiff demanded that

---

[2] The SAC and parties' briefs are inconsistent as to the amount of the loan designated to satisfy property taxes and liens. At this stage, the Court adopts the amount reflected in the SAC.

Madison turn over the Escrow Proceeds it still retains, but Madison refused to do so. (*Id.* at ¶ 89).

On December 18, 2019, Plaintiff filed the instant complaint alleging breach of contract, unjust enrichment, breach of fiduciary duty, and conversion against Madison for its failure to disburse Escrow Proceeds in accordance with its agreement with Plaintiff and return the Escrow Proceeds it retained to Plaintiff.

## LEGAL STANDARDS

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (internal quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing

court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009)).

## ANALYSIS

### I. Defendant's Exhibits

As a preliminary matter, Madison asks this Court to consider several exhibits not attached to the SAC. The documents consist of additional disclosures, contractual agreements, and email correspondence regarding Borrower's escrow arrangements with Madison, Plaintiff's title insurance policy, and Plaintiff's settlement with its title insurer. Courts may not consider such extrinsic evidence without converting a motion to dismiss into one for summary judgment. *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018). The exhibits are not referenced in the SAC and Madison does not argue that they are otherwise appropriate for judicial notice. *See id.* Hence, with the exception of Exhibit 1 and portions of Exhibit 6, which are also attached to the SAC as Exhibits I, F, and G, the Court declines to consider Madison's exhibits.

### II. Breach of Contract (Count IV)

In Count IV, Plaintiff alleges that Madison breached their oral agreement for Madison to serve as escrow agent for Plaintiff. Madison argues that Plaintiff has failed to establish the existence of any contract between them. Madison makes convincing arguments throughout its motion that its agreement was with the Borrower, not Plaintiff. But at the pleading stage, the Court accepts the facts and the allegations in the light most favorable to the Plaintiff.

To state a claim for breach of contract, oral or otherwise, Plaintiff must allege, "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (internal quotations and citation omitted); *Sheth v. SAB Tool Supply Co.*, 990 N.E.2d 738, 754 (Ill. App. Ct. 2013). Plaintiff claims that it "entered into an oral agreement with Madison Title whereby Madison Title agreed to act as an escrow agent …" and that "[p]ursuant to th[is] [a]greement, Plaintiff deposited $1.2 [m]illion into Madison Title's escrow account." (Dkt. 43 at ¶¶ 49-50). Plaintiff further alleges that the oral agreement "required Madison Title to use $419,633.17 of the Loan Amount," the Escrow Proceeds, "to pay off outstanding property taxes and liens against the Property[,]" in accordance with the Settlement Statement. (*Id.* at ¶¶ 52-53). The Court finds these allegations sufficient to allege the existence of a valid contract.

The SAC alleges an offer by Madison to act as escrow agent for Plaintiff, acceptance of which is supported by the fact that (1) Plaintiff deposited $1.2 million into Madison's escrow account and (2) Madison prepared a Settlement Statement reflecting that $419,633.17 will be deducted from the loan amount and held in escrow to pay off taxes and liens on the Property. (Dkt. 43 at Exhibit F). Viewing the allegations in the light most favorable to Plaintiff, it is plausible that the arrangement was for Plaintiff to deposit $ 1.2 million—the amount it agreed to loan Borrower— into Madison's escrow account in exchange for Madison's promise to pay off taxes and liens on the Property. In return, Madison received a cut of the loan

amount as a fee prior to relinquishing the remaining funds to Borrower. Madison argues its fees were technically assessed to Borrower and deducted from Borrower's loan amount (*see* Dkt. 43 at Exhibit I). Viewing this fact in the light most favorable to Plaintiff, Madison's fees were deducted from the principal loan amount provided by Plaintiff prior to Borrower receiving its cut of the loan. The burden will be on Plaintiff to establish that it and not the Borrower had a contractual agreement with Madison as the case progresses. At this point, all plausible inferences must be drawn in Plaintiff's favor. In any event, even if Borrower paid Madison's fees, "consideration given by a third party is adequate to bind the parties to a contract." *Fields v. Gen. Motors Corp.*, 932 F. Supp. 212, fn. 3 (N.D. Ill. 1996), *aff'd*, 121 F.3d 271 (7th Cir. 1997) (citing Restatement (Second) of Contracts § 71 (1981)). Defendant's motion to dismiss Count IV is denied.[3]

### III.   Unjust Enrichment (Count V)

In Count V, Plaintiff brings a claim of unjust enrichment, in the alternative to Count VI. "Unjust enrichment is a 'quasi-contract' theory that permits courts to imply the existence of a contract where none exists in order to prevent unjust results." *Wooley v. Jackson Hewitt, Inc.*, 540 F. Supp. 2d 964, 978 (N.D. Ill. 2008) (citing *Hayes Mech., Inc. v. First Indus., L.P.*, 812 N.E.2d 419, 426 (Ill. App. Ct. 2004). To state a claim for unjust enrichment under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that

---

[3] In its reply brief, Madison disputes the amount of damages Plaintiff claims to have incurred as a result of Madison's failure to pay off outstanding tax liabilities at the time of closing. (Dkt. 61 at 6-7). At this stage, Plaintiff is only required to plead damages resulting from Madison's breach. Madison is free to dispute Plaintiff's damages calculations at a later date.

defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 545 N.E.2d 672, 679 (Ill. 1989).

Madison argues that a contract cannot be implied because Plaintiff does not allege "that it provided anything directly for Madison's benefit with the expectation that it be somehow compensated for the same." (Dkt. 53 at 12). As discussed above, however, construing the allegations in the light most favorable to Plaintiff, Plaintiff adequately alleges that it provided Madison a benefit in the form of capital from which it could deduct a fee, in exchange for its promise to use a portion of those funds—the Escrow Proceeds—to pay off property taxes and liens. Plaintiff further alleges that in lieu of disbursing the Escrow Proceeds to pay off liens and taxes as promised, Madison retained a portion of that benefit—in excess of $77,000—to Plaintiff's detriment, forcing Plaintiff to use its own funds to pay off outstanding taxes on the Property.[4] (Dkt. 43 at ¶¶ 37; 65). These allegations are sufficient to support a claim of unjust enrichment. Defendant's motion to dismiss Count V is denied.

## IV. Breach of Fiduciary Duty (Count VI)

In Count VI, Plaintiff claims that Madison breached its fiduciary duty as an escrow agent to Plaintiff by failing to use the Escrow Proceeds to pay off taxes on the Property in accordance with their oral agreement and the Settlement Statement. "Under Illinois law an escrow agent has a fiduciary duty to the party making the

---

[4] Citing to extrinsic exhibits, Madison argues that it did not retain the escrow proceeds for its own benefit, but rather for Plaintiff and Borrower's benefit. As the Court has already noted, such extrinsic exhibits and factual disputes are not proper for consideration on a motion to dismiss.

deposit and the party for whose benefit the deposit is made. As a result, an escrow agent must act impartially toward all parties. More specifically, an escrow agent's duty is to act only in accordance with the ... escrow instructions." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 782–83 (7th Cir. 2015) (internal quotations and citations omitted).

Madison argues that it does not owe Plaintiff a fiduciary duty because "[r]egardless of the source of the funds, the money received by Borrower through the loan transaction became Borrower's money as of the time of closing and Borrower, therefore became the 'party making the deposit' for purposes of the … escrow", not Plaintiff. (Dkt. 61 at 6). Factual ambiguities at this stage, however, must be resolved in Plaintiff's favor. Plaintiff alleges that it deposited the entire loan amount into Madison's escrow account so that Madison could use a portion of that amount to pay off taxes and liens. This is sufficient to plausibly allege that Plaintiff was the "party making the deposit" under the escrow agreement, and that consequently, Madison owed it a fiduciary duty as a matter of law.[5]

As noted previously, Madison argues that Plaintiff's claim must fail because it was not a party to the escrow which Madison claims was "established at Borrower's direction and for the Borrower's benefit" and administered per "instructions … provided by Borrower to Madison." (Dkt. 53 at 13). The facts Madison provides to

---

[5] Madison argues that the rule that an escrow agent owes the party making the deposit a fiduciary duty only applies when the lender is a party to a written escrow agreement. (Dkt. 61 at 4-5). Although the Court is not aware of an Illinois court applying this rule to an oral escrow agreement, this is not an argument the Court would dispose of on a motion to dismiss.

support this contention, however, are extrinsic to the SAC and must be ignored at this time.[6]

Finally, Madison argues that the Settlement Statement did not provide escrow instructions because it "says nothing with respect to the specifics of the tax escrow or under what circumstances the funds were to be transferred …." (Dkt. 61 at 4). According to Madison, all it was obligated to do under the Settlement Statement was to hold funds in escrow, which it did. (*Id*.) The Court, however, must consider the Settlement Statement in the light most beneficial to Plaintiff. Doing so, the Settlement Statement clearly denotes that $419,633.17 will be deducted from the loan amount for "[d]isbursements" to various lienholders and Cook County to satisfy property tax obligations. (Dkt. 43 at Exhibit F). It is plausible that the parties intended the Settlement Agreement to embody the escrow instructions under their oral escrow agreement. Defendant's motion to dismiss Count VI is denied.

## V. Conversion (Count VII)

In Count VII, Plaintiff claims conversion because Madison improperly retained Escrow Proceeds, instead of using them as directed by Plaintiff, and refuses to return those funds to Plaintiff despite Plaintiff's demands. To state a claim for conversion under Illinois law, "a plaintiff must allege (1) the defendant's unauthorized and wrongful assumption of control, dominion, or ownership over the plaintiff's personal property, (2) the plaintiff's right in the property, (3) the plaintiff's right to immediate

---

[6] Similarly, Madison asserts that there were two escrows established by the parties—the general closing escrow, to which Plaintiff may have been a party, and the specific tax escrow at issue, to which Plaintiff was not a party. (Dkt. 61 at 3). But the SAC alleges only one escrow account and the only one the Court will consider for purposes of this motion.

possession of the property, absolutely and unconditionally, and (4) the plaintiff's demand for possession of the property." *Wei Quan v. Arcotech Uniexpat, Inc.*, 122 N.E.3d 767, 771 (Ill. App. Ct. 2018).

Defendant argues that Plaintiff's conversion claim must fail because "Plaintiff is neither the owner nor entitled to possession of the escrow funds set aside by Borrower for the payment of taxes to the county." (Dkt. 53 at 14). Ambiguities remain to be resolved regarding the parties' escrow arrangement. It is too early for the Court to determine which party has legal entitlement to the Escrow Proceeds. At this point, because Plaintiff alleges that it provided the capital for the escrow account and paid past due taxes, it is plausible that Plaintiff is entitled to the Escrow Proceeds. Defendant's motion to dismiss Count VII is denied.[7]

## **CONCLUSION**

For the foregoing reasons, Defendant's motion is denied.

E N T E R:

Dated: September 11, 2020

_____
MARY M. ROWLAND
United States District Judge

---

[7] In its reply brief, Madison also argues that Plaintiff should be precluded from claiming that "Madison Title's failure to reveal the outstanding taxes precluded Plaintiff from determining whether it should proceed with loan." (Dkt. 61 at 2). The Court agrees but notes that Plaintiff does not allege any theories of negligent misrepresentation against Madison.